KATHLEEN BLISS, ESQ.
Nevada Bar No. 7606
kb@kathleenblisslaw.com
KATHLEEN BLISS LAW PLLC
1070 West Horizon Ridge Pkwy., Suite 202
Henderson, Nevada 89012
Telephone: 702.463.9074

*Attorney for Defendant VDA OC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 2:21-cr-00098-RFB-BNW |
| Plaintiff, | **DEFENDANT VDA OC'S MOTION TO DISMISS** |
| vs. | |
| RYAN HEE AND VDA OC LLC, FORMERLY ADVANTAGE ON CALL, LLC, | |
| Defendants. | |

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(v), Defendant VDA OC, LLC, by and through its undersigned counsel, respectfully moves this honorable Court to dismiss the Indictment. The grounds for this Motion are set forth in the accompanying Memorandum in Support of Defendant's Motion to Dismiss.

Page 1 of 34

KATHLEEN BLISS LAW PLLC
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KATHLEEN BLISS LAW PLLC**
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

Dated: September 3, 2021

Respectfully submitted,

By: *Carole S. Rendon*

Carole S. Rendon (*pro hac vice*)
Mary Pat Brogan (*pro hac vice*)
Sean Sandoloski (*pro hac vice pending*)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: 216.621.0200
Facsimile: 216.696.0740
crendon@bakerlaw.com
ssandoloski@bakerlaw.com
mbrogan@bakerlaw.com

Kathleen Bliss
KATHLEEN BLISS LAW PLLC
1070 W. Horizon Ridge Pkwy.,
Suite 202
Henderson, NV 89012
Office: 702.463.9074
kb@kathleenblisslaw.com
*Attorneys for Defendant VDA OC, LLC*

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KATHLEEN BLISS LAW PLLC**
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

**TABLE OF CONTENTS**

INTRODUCTION ................................................................. 1

STATUTORY BACKGROUND ........................................... 2

FACTUAL ALLEGATIONS ................................................. 3

LEGAL STANDARD ........................................................... 4

ARGUMENT ....................................................................... 5

   I.   The Indictment Fails to Plead A *Per Se* Violation of the Sherman Act ............................. 5

   A. "No-Poach" Agreements are Not a Per Se Violation of the Sherman Act ...................... 5

   B. The Indictment Alleges an Ancillary Restraint Subject to the Rule of Reason .............. 12

II. Extending the Per Se Rule to No-Poach Agreements for the First Time In A Criminal Prosecution Would Violate Due Process ......................... 16

III. Application of the *Per Se* Rule to No-Poach Agreements Is an Unconstitutional Application of the Sherman Act. ..................................... 18

   IV.   The Indictment Fails to Demonstrate the Alleged Conduct's Effect on Interstate Commerce ....................................................... 19

CONCLUSION ................................................................... 23

iii

**KATHLEEN BLISS LAW PLLC**
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. Maricopa Cty. Med. Soc.*,
   457 U.S. 332 (1982)......................................................................................5, 6

*In re ATM Fee Antitrust Litig.*,
   554 F. Supp. 2d 1003 (N.D. Cal. 2008) (Breyer, J.) ......................................6

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
   — F.4th —, 2021 WL 3671384 (9th Cir. Aug. 19, 2021) ...........................13, 14

*Aydin Corp. v. Loral Corp.*,
   718 F.2d 897 (9th Cir. 1983) ........................................................................8, 12

*Bogan v. Hodgkins*,
   166 F.3d 509 (2d Cir. 1999)............................................................................8

*Conrad v. Jimmy John's Franchise, LLC*,
   ECF 240, No. 18-cv-00133-NJR (S.D. Ill. July 23, 2021) .........................10, 11

*Craftsmen Limousine, Inc. v. Ford Motor Co.*,
   363 F.3d 761 (8th Cir. 2004) ..........................................................................5

*Deslandes v. McDonald's USA, LLC*,
   2018 WL 3105955 (N.D. Ill. June 25, 2018) ..................................................9

*Deslandes v. McDonald's USA, LLC*,
   2021 WL 3187668, No. 17-cv-4857 (N.D. Ill. July 28, 2021) .....................9, 16

*Eichorn v. AT & T Corp.*,
   248 F.3d 131 (3d Cir. 2001), *as amended* (June 12, 2001)..............................8

*Freeman v. San Diego Ass'n of Realtors*,
   322 F.3d 1133 (9th Cir. 2003) .......................................................................20

*Furlong v. Long Island College Hosp.*,
   710 F.2d 922 (2d Cir. 1983)..........................................................................22, 23

*Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*,
   128 F.3d 59 (2d Cir. 1997)..............................................................................23

*California ex rel. Harris v. Safeway, Inc.*,
   651 F.3d 1118 (9th Cir. 2011) .........................................................................6

iv

**KATHLEEN BLISS LAW PLLC**
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

*Kelsey K. v. NFL Enterprises, LLC*,
  757 F. App'x 524 (9th Cir. 2018) ...................................................................10

*L.A. Mem'l Colisuem Com'n v. Nat'l Football League*,
  726 F.2d 1381 (9th Cir. 1984) .........................................................................8

*Landgraf v. USI Film Prods*,
  511 U.S. 244 (1994)........................................................................................17

*Las Vegas Merchant Plumbers Ass'n v. United States*,
  210 F.2d 732 (9th Cir. 1954) ..........................................................................19

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
  551 U.S. 877 (2007)................................................................................2, 3, 10

*Markson v. CRST Int'l, Inc.*,
  2021 WL 1156863 (C.D. Cal. Feb. 10, 2021)...................................................8

*Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*,
  922 F.3d 713 (6th Cir.) .....................................................................................5

*Morissette v. United States*,
  342 U.S. 246 (1952).........................................................................................18

*Nat'l Collegiate Athletic Ass'n v. Alston*,
  141 S. Ct. 2141 (2021)...........................................................................8, 9, 10

*Nat'l Soc. of Prof. Engineers v. United States*,
  435 U.S. 679 (1978)...........................................................................................2

*Ohio v. Am. Express Co.*,
  138 S.Ct. 2274 (2018).......................................................................................2

*Polk Bros., Inc. v. Forest City Enters, Inc.*,
  776 F.2d 185 (7th Cir. 1985) ...............................................................12, 13, 15

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*,
  792 F.2d 210 (D.C. Cir. 1986).................................................................12, 16

*Skilling v. United States*,
  561 U.S. 358 (2010)........................................................................................17

*State Oil Co. v. Khan*,
  522 U.S. 3 (1997)...............................................................................................6

*Summit Health, Ltd. v. Pinhas*,
  500 U.S. 322 (1991) (Scalia, J., dissenting) ..................................................21

v

*Texaco Inc. v. Dagher*,
    547 U.S. 1 (2006) ................................................................................................... 2

*United States v. Alvarez-Ulloa*,
    784 F.3d 558 (9th Cir. 2015) ............................................................................... 5

*United States v. eBay, Inc.*,
    968 F. Supp.2d 1030 (N.D. Cal. 2013) ............................................................... 8

*United States v. Gypsum Co.*,
    438 U.S. 422 (1978) ................................................................................... 3, 5, 17

*United States v. Jindal*,
    No. 4:20-cr-358-ALM (E.D. Tex.) (filed December 9, 2020) .............................. 7

*United States v. Kelly*,
    874 F.3d 1037 (9th Cir. 2017) ............................................................................. 5

*United States v. Oregon St. Med. Society*,
    343 U.S. 326 (1952) ....................................................................................... 20, 21

*United States v. Realty Multi-List, Inc.*,
    629 F.2d 1351 (5th Cir. 1980) ........................................................................... 10

*United States v. Surgical Care Affiliates LLC*,
    No. 3:21-cr-00011-L (N.D. Tex.) (filed January 5, 2021) .................................. 7

*United States v. Vega-Martinez*,
    949 F.3d 43 (1st Cir. 2020) ........................................................................... 19, 21

*In re Winship*,
    397 U.S. 358 (1970) ........................................................................................... 18

**Statutes**

Sherman Act, 15 U.S.C. § 1 .................................................................... *passim*

**Rules**

Fed. R. Crim. P. 12(b)(3)(v) ............................................................................ 1, 5

Federal Rule of Criminal Procedure 7(c)(1) ....................................................... 4

**Other Authorities**

Br. for the U.S. in Opp'n, *Sanchez v. United States*, No. 19-288 (U.S. Nov. 25, 2019) ................................................................................................................... 6

**KATHLEEN BLISS LAW PLLC**
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

Brief of Amicus United States in Support of Neither Party, *Aya Healthcare Servs., Inc v. AMN Healthcare, Inc.*, 2020 WL 7029426 (C.A.9)....................................13, 14

Bryan Koenig, *DaVita Indictment, Biden Order Ramp Up No-Poach Pressure*, LAW360 (July 19, 2021), *available at* https://www.law360.com/articles/1403705/davita-indictment-biden-order-ramp-up-no-poach-pressure .............................................................................................7

Corrected Statement of Interest of the United States, ECF 34, *Stigar v. Dough Dough, Inc.* No. 18-cv-244 (E.D. Wash. March 8, 2019)....................................11, 13

Gregory J. Werden, *Antitrust Analysis of Joint Ventures: An Overview*, 66 ANTITRUST L.J. 701, 717 (1998)..........................................................................................13

Matthew Perlman, *Delrahim Says Criminal No-Poach Cases Are In The Works* (Jan. 19, 2019), *available at* https://www.law360.com/articles/1003788/delrahim-says-criminal-no-poach-cases-are-in-the-work ............................................7

Memorandum in Support of Defendants' Motion to Dismiss, *United States v. Surgical Care Affiliates LLC*, ECF 38 at 18, No. 3:21-cr-00011-L (N.D. Tex.) ....................18

Report of the Attorney General's National Committee to Study the Antitrust Laws 349 (1955)..........................................................................................................................6

Robert E. Connolly, *Some "Twinkling of the Eye" Thoughts on NCAA v. Alston,* http://antitrustconnect.com/2021/06/30/some-twinkling-of-the-eye-thoughts-on-ncaa-v-alston/...........................................................................................................19

Roxann E. Henry, *Per Se Antitrust Presumptions in Criminal Cases,* COLUM. BUS. L.R. (2020) *available at* https://journals.library.columbia.edu/index.php/CBLR/article/view/8477............................19

Statement of Interest of the United States, ECF 325, *Seaman v. Duke University*, No. 1:15-cv-462 (M.D.N.C. March 7, 2019) ...........................................................11

U.S. Dep't of Justice & Fed. Trade Comm'n, *Antitrust Guidance for Human Resources Professionals* (Oct. 2016), https://www.justice.gov/atr/file/903511/download...................................................6

United States' Opp. to Defs.' Mot. to Dismiss, *United States v. Surgical Care Associates*, ECF 44 at 29, 3:21-cr-00011-L (N.D. Tex.) .........................................17

KATHLEEN BLISS LAW PLLC
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

vii

**KATHLEEN BLISS LAW PLLC**
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

## INTRODUCTION

This prosecution—against a company that ceased operations in July 2017 and has been dissolved for more than two years and a former employee of that company—is one of the first criminal cases the Antitrust Division of the Department of Justice has brought as part of its publicized campaign to criminalize agreements between employers not to recruit or hire each other's employees. No statute specifically criminalizes such conduct and no court has recognized this conduct as criminal. The alleged conspirators were healthcare staffing agencies who placed nurses with a school district for the daily care of students with medically complex needs, and the entire alleged conspiracy began and ended in less than one school year.

The Antitrust Division has a policy of only prosecuting *per se* violations of the Sherman Act, not ones that are subject to the rule of reason, which requires a higher level of analysis of whether the conduct involved is an illegal restraint of trade. In order for conduct to be a *per se* violation, there must be a consistent history of court recognition that the conduct is *per se* violative. Very few courts have even considered this question and no courts have concluded that agreements not to recruit or hire employees are *per se* violations of the Sherman Act, so the Government cannot demonstrate the requisite history of judicial interpretation. On this basis alone, the Indictment must be dismissed for failure to state a *per se* offense. *See* Fed. R. Crim. P. 12(b)(3)(v).

Moreover, allowing this prosecution to continue would violate Mr. Hee and VDA OC's constitutional rights to due process, fair notice, and the right to a jury trial. Application of a novel and unsupported theory of law is necessarily violative of due process and fair notice. And allowing prosecution as if this were a *per se* offense would prevent a jury from determining whether the government has proven an element of the offense beyond a reasonable doubt.

1

**KATHLEEN BLISS LAW PLLC**
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

## STATUTORY BACKGROUND

Defendants are charged with a conspiracy to violate Section 1 of the Sherman Act, 15 U.S.C. § 1. Section 1 makes illegal "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states… is declared to be illegal." 15 U.S.C. § 1. Recognizing that some conduct that may facially be a "restraint of trade" may be reasonable, procompetitive, and beneficial, the Supreme Court has "repeated time and again that § 1 'outlaw[s] only unreasonable restraints.'" *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007) (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997)); *see also Ohio v. Am. Express Co.*, 138 S.Ct. 2274, 2283 (2018) ("In view of the common law and the law in this country when the Sherman Act was passed, the phrase 'restraint of trade' is best read to mean 'undue restraint.'" (alterations and citation omitted)).

In order to limit the enforcement of the Sherman Act to only such unreasonable restraints, the Supreme Court has explained that courts should "not take[] a literal approach" and instead should "presumptively appl[y] rule of reason analysis" which requires proof "that a particular contract or combination is in fact unreasonable and anticompetitive before it will be found unlawful." *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006).  Rule of reason analysis requires "analyzing the facts peculiar to the business, the history of the restraint, and the reasons why it was imposed." *Nat'l Soc. of Prof. Engineers v. United States*, 435 U.S. 679, 692 (1978). "*Per se* liability is reserved for only those agreements that are 'so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality.'" *Dagher*, 547 U.S. at 5.  (quoting *Nat'l Soc. of Prof. Engineers*, 435 U.S. at 692). The limited *per se* treatment "is appropriate only after courts have had considerable experience with the type of restraint at issue, and only if courts can predict with confidence that it would be invalidated in all or almost all instances under the rule of

2

**KATHLEEN BLISS LAW PLLC**
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

reason." *Leegin*, 551 U.S. at 886–87 (citation omitted). Further, courts are "reluctan[t] to adopt *per se* rules with regard to restraints imposed in the context of business relationships where the economic impact of certain practices is not immediately obvious." *Id.* at 887 (quoting *Khan*, 522 U.S. at 10). As a result, only those restraints that "have manifestly anticompetitive effects … and lack any redeeming virtue" can be deemed *per se* violations of the Sherman Act. *Id.* at 886 (alterations and quotations omitted).

The Sherman Act is enforced both criminally and civilly. When it is enforced criminally, the restrictions on *per se* treatment are even more significant because improper application of the doctrine would lead to criminal prosecution of "behavior . . . [that] is often difficult to distinguish from the gray zone of socially acceptable and economically justifiable business conduct." *United States v. Gypsum Co.*, 438 U.S. 422, 440-41 (1978). Allowing prosecutions of conduct that may be in this gray zone would permit "criminal sanctions [to] be used, not to punish conscious and calculated wrongdoing at odds with statutory proscriptions, but instead simply to *regulate* business practices[.]" *Id.* at 442. Civil enforcement of the Sherman Act is the vehicle for this sort of business regulation, not criminal punishment.

### FACTUAL ALLEGATIONS

The Indictment charges VDA OC, LLC (formerly Advantage On Call or AOC) and Ryan Hee with a conspiracy to restrain trade in violation of the Sherman Act. AOC operated as a healthcare staffing agency that provided nurses to various healthcare facilities, including school systems. (ECF 1, Indictment at ¶ 3). Hee worked for AOC as a Regional Manager in Las Vegas. (ECF 1 at ¶ 4). In 2013, AOC was one of multiple companies to bid on and receive a contract to provide staffing services to the Clark County School District (CCSD) in Nevada to provide nurses to care for medically fragile students. (ECF 1 at ¶¶ 2, 8).   Company A was also a contracted

provider of nursing staff to CCSD. (ECF 1 at ¶ 8).

The Indictment alleges that in October 2016, Mr. Hee and AOC entered a conspiracy with Company A and Individual 1 to allocate nurses assigned to CCSD and to refrain from raising wages for those nurses. (ECF 1 ¶ 12). The only specific conduct alleged to have been taken by AOC or Mr. Hee occurred on or about October 21, 2016, as reflected in an email on that date. (ECF 1 ¶ 14). The Indictment does not allege that any nurse at AOC who was assigned to CCSD was ever refused a raise, nor that any nurse from Company A who was assigned to CCSD ever sought employment at AOC and was denied. Indeed, the Indictment alleges only that Company A employees were "instructed . . . not to recruit or hire a co-conspirators company's nurses assigned to CCSD" and that a nurse employed at Company A was denied a raise. (ECF 1 at ¶ 14(e), (g)). In contrast, there is no allegation that Mr. Hee or AOC ever instructed AOC's employees not to recruit or hire Company A's employees.

The Indictment alleges that this agreement began in October 2016 and lasted until July 2017. (ECF 1 at ¶ 12). In July 2017, AOC ceased operations when it was sold to another healthcare staffing company. The legacy company, which did not continue to operate or provide any staffing services, was renamed as VDA OC, LLC in July 2017. (*See* ECF 1 at ¶ 3). Thus, the Indictment alleges a conspiracy affecting only nurses assigned to a single school district and occurring within a single academic year.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c)(1) requires that Indictments provide "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The Indictment must articulate "the crime charged, the essential elements of the indicated crime, and the acts alleged to constitute the offense in detail sufficient to bring them

4

**KATHLEEN BLISS LAW PLLC**
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

within the scope of the offense and sufficient to inform the accused generally of the acts attributed to him and the time of their commission." *United States v. Alvarez-Ulloa*, 784 F.3d 558, 570 (9th Cir. 2015) (quotations omitted). An Indictment that fails to state an offense must be dismissed. Fed. R. Crim. P. 12(b)(3)(B)(v). "A motion to dismiss is generally capable of determination before trial if it involves questions of law rather than fact." *United States v. Kelly*, 874 F.3d 1037, 1046 (9th Cir. 2017) (quotations and alterations omitted). Because Defendants' challenges to the Indictment here "are based on legal issues," the court "may resolve the issues here without intruding upon the province of the ultimate finder of fact." *Id*. at 1046-47.

Whether to apply the *per se* rule or the rule of reason is a question of law. *See*, e.g. *Arizona v. Maricopa Cty. Med. Soc.*, 457 U.S. 332, 337, n.3, 354 (1982); *Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 727 (6th Cir.) ("Whether challenged conduct belongs in the per se category is a question of law."); *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 772 (8th Cir. 2004) (reviewing *de novo* whether an agreement constituted a *per se* antitrust violation).

Because the Government only alleges a *per se* violation of the Sherman Act, determination of which analytical rule applies could be dispositive and is therefore ripe for decision on a motion to dismiss.

## ARGUMENT

### I.   THE INDICTMENT FAILS TO PLEAD A *PER SE* VIOLATION OF THE SHERMAN ACT

### A. "No-Poach" Agreements are Not a Per Se Violation of the Sherman Act

Unlike most traditional criminal statutes, the Sherman Act, "does not, in clear and categorical terms, precisely identify the conduct which it proscribes." *U.S. Gypsum Co.*, 438 U.S. at 438. Because of the opaque and imprecise nature of the statute, the Antitrust Division prosecutes

only *per se* violations of the Act, meaning conduct that courts have previously and consistently recognized as pervasively anticompetitive and a clear violation of the Sherman Act. *See, e.g.,* Br. for the U.S. in Opp'n at 11 n.1, *Sanchez v. United States*, No. 19-288 (U.S. Nov. 25, 2019) ("[T]he government brings criminal antitrust prosecutions only based on conduct that violates the per se rule."); Report of the Attorney General's National Committee to Study the Antitrust Laws 349 (1955) (recommending that enforcement of the Sherman Act through "criminal process should be used only where the law is clear and the facts reveal a flagrant offense and plain intent unreasonably to restrain trade.").

Whether the allegations in the Indictment constitute a *per se* violation is a legal question for the Court. *Arizona v. Maricopa County*, 457 U.S. 332, 337 n.3, 354 (1982); *see also In re ATM Fee Antitrust Litig.*, 554 F. Supp. 2d 1003, 1010 (N.D. Cal. 2008) (Breyer, J.) ("[T]he decision of what mode of analysis to apply—per se, rule of reason, or otherwise—is entirely a question of law for the Court, even though the question might involve factual disputes.") The operative question is whether "experience with a particular kind of restraint enables the Court to predict with confidence that" the antitrust laws condemn it categorically. *State Oil Co. v. Kahn*, 522 U.S. 3, 10 (1997); *see also California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1132 (9th Cir. 2011).

In October 2016, the Antitrust Division proclaimed that "[g]oing forward, the DOJ intends to proceed criminally against naked wage fixing or no-poaching agreements." *See* U.S. Dep't of Justice & Fed. Trade Comm'n, *Antitrust Guidance for Human Resources Professionals* at 4 (Oct. 2016), https://www.justice.gov/atr/file/903511/download ("2016 H.R. Guidance"). And it has been on the hunt for a case—any case—to test out its novel theory.[1] After this highly publicized

---

[1] The then-head of the Antitrust Division, Assistant Attorney General Makan Delrahim, announced on January 19, 2018, that the Division would be bringing its first such case "in the coming couple of months." *See* Matthew Perlman, *Delrahim Says Criminal No-Poach Cases Are In The Works,*

**KATHLEEN BLISS LAW PLLC**
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

effort in the last few years, and amid growing pressure to bring so-called criminal "no-poach" cases,[2] the Antitrust Division brought three criminal cases within four months of one another—including this one—on the novel and untested theory that agreements not to hire employees constitute criminal conduct under the Sherman Act. *See United States v. Surgical Care Affiliates LLC*, No. 3:21-cr-00011-L (N.D. Tex.) (filed January 5, 2021); *United States v. Jindal*, No. 4:20-cr-358-ALM (E.D. Tex.) (filed December 9, 2020).[3]  Of note, all of these cases target the healthcare industry.

The Antitrust Division in this case is trying to do something no other federal court or jury in this country has sanctioned. The Antitrust Division proclaims the alleged conduct in this case is criminal conduct that is *per se* illegal under the Sherman Act. But just because the Antitrust Division wants to criminalize "no-poach agreements," does not make it so. No federal court has ever even concluded that agreements not to solicit employees are *per se* illegal under the Sherman Act, let alone found that agreements not to recruit another company's employees are criminal violations of the Sherman Act.[4]  *See, e.g., Aydin Corp. v. Loral Corp.,* 718 F.2d 897, 900 (9th Cir.

---

LAW360 (Jan. 19, 2019), *available at* https://www.law360.com/articles/1003788/delrahim-says-criminal-no-poach-cases-are-in-the-works.

[2] *See, e.g.,* Bryan Koenig, *DaVita Indictment, Biden Order Ramp Up No-Poach Pressure*, LAW360 (July 19, 2021), *available at* https://www.law360.com/articles/1403705/davita-indictment-biden-order-ramp-up-no-poach-pressure.

[3] At the time of this briefing, there is a fully briefed motion to dismiss pending in the *Surgical Care Affiliates* case (ECF Nos. 38, 44, 45, No. 3:21-cr-00011-L (N.D. Tex.)). The Chamber of Commerce of the United States also filed an *amicus curiae* brief in the *Surgical Care Affiliates* case in support of the motion to dismiss. (ECF No. 39, No. 3:21-cr-00011-L (N.D. Tex.)) There are two fully briefed motions to dismiss pending in the *Jindal* case, one on the merits filed by Jindal (ECF Nos. 36, 46, 47, No. 4:20-cr-00358, (E.D. Tex)) and one filed by co-defendant Rodgers moving for dismissal based on the government's improper recission of a non-prosecution agreement (ECF Nos. 45, 48, 50 No. 4:20-cr-00358, (E.D. Tex)).

[4] *Markson v. CRST Int'l, Inc.* is not to the contrary. There the court concluded only that Plaintiffs had "alleged sufficient facts to support a plausible per se claim," not that such an agreement is a per se violation of the Sherman Act. *Markson v. CRST Int'l, Inc.,* 2021 WL 1156863, at *4 (C.D.

KATHLEEN BLISS LAW PLLC
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

KATHLEEN BLISS LAW PLLC
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

1983) (refusing to apply the *per se* rule to employee covenants not to compete); *Eichorn v. AT & T Corp.*, 248 F.3d 131, 143 (3d Cir. 2001), *as amended* (June 12, 2001) ("While plaintiffs contend the no-hire agreement was per se illegal because it was a horizontal group boycott and a price-fixing conspiracy, we can find no support within the relevant case law for this label."); *Bogan v. Hodgkins*, 166 F.3d 509 (2d Cir. 1999) (allegations regarding restrictions on life insurance agents switching agencies in a given market did "not trigger *per se* treatment because the Agreement does not fit into any of the established *per se* categories."). This fact is fatal to the Antitrust Division's case here.   The *per se* rule is only to be used "[w]hen judicial experience with a particular kind of restraint enables a court to predict with certainty that the rule of reason will condemn the restraint." *L.A. Mem'l Colisuem Com'n v. Nat'l Football League*, 726 F.2d 1381, 1387 (9th Cir. 1984).

As the Supreme Court recently explained in *NCAA v. Alston*, "[r]ecognizing the inherent limits on a court's ability to master an entire industry—and aware that there are often hard-to-see efficiencies attendant to complex business arrangements" courts must "take special care not to deploy these condemnatory tools until we have amassed 'considerable experience with the type of restraint at issue' and 'can predict with confidence that it would be invalidated in all or almost all instances.'" *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2156 (2021) (quoting *Leegin* 551 U.S. at 886–887). This is so because "even under the best of circumstances, applying the antitrust laws can be difficult—and mistaken condemnations of legitimate business arrangements are especially costly, because they chill the very procompetitive conduct the antitrust laws are designed to protect." *Id.* at 2161 (quoting *Verizon Communications Inc. v. Law Offices of Curtis*

---

Cal. Feb. 10, 2021); *cf. United States v. eBay, Inc.*, 968 F. Supp.2d 1030, 1039 (N.D. Cal. 2013) ("The fact that the court finds that the United States adequately alleged a market allocation agreement does not in and of itself indicate that per se treatment is imminent.").

*V. Trinko, LLP*, 540 U.S. 398, 414 (2004)).

The Supreme Court's recent recitation of the high-standard for *per se* cases already has manifested itself in "no-poach" cases. Take *Deslandes v. McDonald's USA, LLC*, in which plaintiffs allege that multiple McDonald's franchises had agreed not to hire each other's employees. *Deslandes v. McDonald's USA, LLC*, 2021 WL 3187668, No. 17-cv-4857 at *7 (N.D. Ill. July 28, 2021). The district court concluded that the alleged agreement not to hire was subject to the rule of reason analysis, noting that the "Court cannot say that it has enough experience with no-hire provisions of franchise agreements to predict with confidence that they must always be condemned, which means, under *Alston*, that the Court must apply the rule of reason analysis to this case." *Id.*[5]

So too here. No federal court has had sufficient experience with alleged no-poach agreements—let alone those in the somewhat complex market of healthcare staffing agencies providing nurses to school systems—to conclude that all agreements not to recruit or hire employees are always anticompetitive. In fact, courts that have addressed these issues have come to different conclusions on this issue. When courts "are uncertain of the competitive significance of a particular type of restraint, they decline to apply the *per se* label." *United States v. Realty*

---

[5] The government relied on an earlier decision in this case in its brief opposing the motion to dismiss in the *Surgical Care Affiliates*. ECF 44, at 20, 3:21-cr-00011-L (N.D. Tex.) ("[E]ven courts assessing franchise restraints have noted that the per se rule would apply to naked horizontal restraints. *See, e.g., Deslandes*, 2018 WL 3105955, at *6.*"). That earlier decision acknowledged in dicta that an agreement not to hire could be "suitable for *per se* treatment," but held that the restraint alleged was ancillary and therefore not subject to *per se* treatment. *Deslandes v. McDonald's USA, LLC*, 2018 WL 3105955, at *6-*7 (N.D. Ill. June 25, 2018). The court concluded that the alleged agreement might be subject to the "quick look" analysis, which falls between the *per se* approach and the rule of reason. *Id.* However, after applying *Alston*, the Northern District of Illinois concluded that even the "quick look" analysis was inapplicable and rule of reason analysis was required based on the court's lack of experience with no-hire provisions of franchise agreements. *Deslandes*, 2021 WL 3187668 at *7.

KATHLEEN BLISS LAW PLLC
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

9

KATHLEEN BLISS LAW PLLC
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

*Multi-List, Inc.*, 629 F.2d 1351, 1365 (5th Cir. 1980).

Even if courts had sufficient experience with no-poach restraints, applying the *per se* rule would not be appropriate here. "'[D]eparture from the rule-of-reason standard must be based upon demonstrable economic effect rather than ... upon formalistic line drawing.'" *Leegin,* 551 U.S. at 887 (quoting *Cont'l T.V., Inc. v. GTE Sylvania Inc*., 433 U.S. 36, 58–59 (1977)). The courts' treatment of "no-poach" cases demonstrates that not all cases can show such a demonstrable economic effect. *See supra. Kelsey K. v. NFL Enterprises, LLC*, however, provides a more specific, recent example of how courts have analyzed these "no-poach" agreements and concluded that they do not always demonstrate a negative economic effect. 757 F. App'x 524 (9th Cir. 2018). A cheerleader for the San Francisco 49ers alleged that the NFL and 27 NFL teams engaged in a conspiracy to violate the Sherman Act by two agreements, "namely a no-poaching agreement and a wage fixing agreement" based on an annually ratified agreement prohibiting NFL teams "from tampering with other teams' employees while they are under contract." *Id*. at 526. The Ninth Circuit affirmed dismissal of the complaint because the cheerleader "fail[ed] to plausibly allege *per se* illegality of either agreement" because her allegations did not show "inten[t] to harm or restrain trade." *Id*. To the contrary, they "suggest[ed] rational, legal business behavior, not a violation of the antitrust laws." *Id.*

The Southern District of Illinois's recent opinion in *Conrad v. Jimmy John's Franchise, LLC*— one of the first to address the issue after the Supreme Court's decision in *Alston*, 141 S. Ct. 2141—is also instructive. The plaintiffs in that case alleged that Jimmy John's Franchise Agreement prohibited employees from switching between franchises and therefore was a "naked restraint of competition" and a no-poach agreement that violated the Sherman Act. *Conrad v. Jimmy John's Franchise, LLC*, ECF 240, at 4, No. 18-cv-00133-NJR (S.D. Ill. July 23, 2021) (attached hereto as Exhibit A). Applying *Alston* to an alleged no-poach provision, the Court

10

KATHLEEN BLISS LAW PLLC
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

concluded that "monopsony claims were appropriately analyzed under the rule of reason, not the per se rule." (Exhibit A at 25-26.  The court in *Conrad* noted that despite an admission from the NCAA in *Alston* that their conduct constituted "horizontal price fixing in a market" in which they "exercise[d] monopoly control," the Supreme Court took "special care not to deploy" a *per se* analysis given the "often hard-to-see efficiencies attendant to complex business arrangements." (*Id.* at 25 (quoting *Alston*, 141 S. Ct. at 2156)).

Indeed, no-poach agreements can have procompetitive effects, as even the Government has conceded, contradicting the proposition that they are *per se* illegal.   As the Antitrust Division noted in a Statement of Interest filed in *Seaman v. Duke University*, No. 15-cv-462 (M.D.N.C.), "[i]f a no-poach agreement is reasonably necessary to a separate, legitimate business … [c]ollaboration among the employers, it is not *per se* unlawful as a naked restraint, but instead judged under the rule of reason." Statement of Interest of the United States, ECF 325 at 24, *Seaman v. Duke University*, No. 1:15-cv-462 (M.D.N.C. March 7, 2019); *see also* Corrected Statement of Interest of the United States, ECF 34 at 11-12, *Stigar v. Dough Dough, Inc.* No. 18-cv-244 (E.D. Wash. March 8, 2019) (certain no-poach provisions should be analyzed under the rule of reason). And even the 2016 H.R. Guidance–where the Division first took it upon itself to declare "no-poach" cases criminal—recognized that "no-poaching agreements" are permissible if they are ancillary to other activities and are only (in their view) *per se* violations if they are "naked" agreements. Antitrust Guidance for Human Resources Professionals at 3 (Oct. 2016). No categories of consistently recognized *per se* violations require the conduct to have a "naked" qualifier to be deemed *per se*.

Because of the absence of any courts recognizing no-poach agreements as *per se* violations of the Sherman Act and the potentially procompetitive effects of such agreements, Defendants ask

the Court not to be the first to create a new category of *per se* violations and instead to dismiss the Indictment.

### B.  The Indictment Alleges an Ancillary Restraint Subject to the Rule of Reason

An agreement that would otherwise be condemned as *per se* unlawful is still subject to the rule of reason if it is an ancillary restraint on competition.  *See Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 901 (9th Cir. 1983) ("The proper function of ancillarity in antitrust analysis is to remove in some instances the *per se* label from restraints otherwise falling within the category." (quotation and citation omitted)).  "To be ancillary, and hence exempt from the *per se* rule, an agreement eliminating competition must be subordinate and collateral to a separate, legitimate transaction." *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 224 (D.C. Cir. 1986).  A restraint qualifies as ancillary when it "serves to make the main transaction" between entities in a joint venture "more effective in accomplishing its purpose,"  *id.*, or is "part of a larger endeavor whose success [it] promote[s]."  *Polk Bros., Inc. v. Forest City Enters, Inc.*, 776 F.2d 185, 189 (7th Cir. 1985).

In evaluating whether the alleged agreement between AOC and Company A was ancillary, the ultimate question is "whether [the] agreement promoted enterprise and productivity at the time it was adopted.  If it arguably did, then the court must apply the Rule of Reason to make a more discriminating assessment."  *Polk Bros.*, 776 F.2d at 189.  Put another way, did the restraint in question "viewed at the time it was adopted . . . promote the success of this more extensive cooperation"?  *Id.* "Any genuine economic integration that plausibly could confer nontrivial social benefits suffices to take a joint venture outside the purview of the per se rule." Gregory J. Werden, *Antitrust Analysis of Joint Ventures: An Overview*, 66 ANTITRUST L.J. 701, 717 (1998).

As noted above, the Department of Justice has been explicit that the ancillary restraints

KATHLEEN BLISS LAW PLLC
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

12

doctrine applies in the no-poach context: the rule of reason applies to "agreements between labor-market competitors not to poach each other's employees" if "reasonably necessary to a separate, legitimate business transaction or collaboration between the companies."  Corrected Statement of Interest at 8, *Stiger v. Dough Dough, Inc.*, No. 18-cv-244 (E.D. Wash. March 8, 2019); *see also* Antitrust Guidance for Human Resources Professionals at 3 (Oct. 2016).

But perhaps most on point, the Ninth Circuit recently examined whether the *per se* rule or the rule of reason should apply to a non-solicitation agreement between two companies that supply temporary nurses to hospitals, concluding that the *per se* rule did not apply because the alleged conduct was an ancillary restraint. *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, — F.4th —, 2021 WL 3671384, (9th Cir. Aug. 19, 2021). In *Aya,* both parties were healthcare staffing agencies that placed nurses with hospitals or other facilities for temporary assignments. *Id*. at *1. AMN used Aya as an "associate vendor" that could fill assignments that AMN was unable to fill. *Id.* at *2. However, Aya also competed directly with AMN, because it also independently filled assignments for hospitals and other facilities. *Id*. As part of Aya and AMN's contract, Aya was prohibited from soliciting AMN's employees. *Id*.

The United States submitted an *amicus* brief to the Ninth Circuit in *Aya* "to explain its views on the law applicable to non-solicitation agreements between competing employers." Brief of Amicus United States in Support of Neither Party at *1, *Aya Healthcare Servs., Inc v. AMN Healthcare, Inc.*, 2020 WL 7029426 (C.A.9). In that brief, the United States took the unequivocal position that the AMN contract should be viewed as a no-poach agreement and explained that it defines "no-poach agreement" to "identify a particular type of labor-market allocation: an agreement among employers that includes any or all of the commitments not to solicit, hire, or otherwise compete for certain employees." *Id*. at *25. The United States urged the Ninth Circuit

13

to find that such no-poach agreements were a *per se* violation. The Ninth Circuit categorically refused.

Instead, the Ninth Circuit held that the agreement between providers of traveling nurses not to poach each other's nurses was an ancillary restraint "reasonably necessary to the parties' procompetitive collaboration" and therefore subject to the rule of reason. *Aya Healthcare*, — F.4th —, 2021 WL 3671384, at *5. It concluded that "[t]he purpose of the parties' contract was to supply hospitals with traveling nurses. The non-solicitation agreement is necessary to achieving that end because it ensures that AMN will not lose its personnel during the collaboration." *Id*. And so, as the Ninth Circuit recognized, the restraint was ancillary and therefore subject to the rule of reason analysis, not the *per se* rule.

Here, AOC and Company A both had contracts to "provide nurse staffing services to support students with complex medical needs" at CCSD schools. (ECF 1 ¶¶ 2, 8). The main transaction originated with a Request for Proposal (RFP) put out by CCSD in August 2013. (ECF 1 at ¶ 2). The purpose of that RFP was to outsource the hiring of professionals with a special skill set necessary to "provide constant care to medically fragile students, including during classroom time, traveling the hallways, bus rides, meals, field trips, and other school-based activities." (ECF 1 at ¶ 2). Cooperation and integration of the nurses and the companies providing those nurses would achieve the purpose of the CCSD contract more efficiently and effectively. The alleged agreement between AOC and Company A ran for less than one school year. In a single school year, it served CCSD to have a stable source of nurses over the course of that school year to provide consistent care to its medically fragile students and not to have nurses leaving or switching employers in the middle of the school year. Any alleged agreement between these two companies therefore must be considered ancillary to their shared role for CCSD. Time spent by either

14

company to recruit or hire nurses already working at CCSD would not contribute to their shared contractual purpose of providing consistent and stable medical services to CCSD's students.

It has also been recognized that agreements between competitors operating in shared facilities may also be considered ancillary. *See, e.g., Polk Bros.*, 776 F.2d at 190; *see also* Antitrust Guidance for Human Resources Professionals at 3 (Oct. 2016). In *Polk Brothers*, the Seventh Circuit interpreted Illinois' antitrust laws in accord with federal antitrust laws and concluded that where two stores shared the same building with the purpose of providing a more convenient shopping experience for customers, their agreement not to sell certain products over which they would otherwise compete was ancillary and therefore subject to the rule of reason. *Polk Bros.*, 776 F.2d at 190. Here, the nurses from AOC and Company A served the same student populations at CCSD and were not divided between specific schools. They operated in shared space and facilities, often working side-by-side in the same classroom providing hands-on care to the students with complex medical needs. This day-to-day partnership and collaboration of nurses requires recognition that the alleged agreement must be considered ancillary to the main transaction of providing nursing care to CCSD students.

Further, the need to avoid the "free rider" problem also provides yet another classic reason that the alleged restraint in the instant case should be recognized as ancillary and subject to the rule of reason rather than the *per se* rule. *Rothery*, 792 F.2d at 214 ("Atlas' new policy does not offend the antitrust laws. The challenged restraint is ancillary to the economic integration of Atlas and its agents so that the rule of per se illegality does not apply."). In *Rothery*, Atlas Van Lines prohibited its agent van lines from using Atlas equipment, facilities, or equipment. The D.C. Circuit concluded that this was an ancillary restraint subject to the rule of reason because it "preserve[d] the efficiencies of the nationwide van line by eliminating the problem of the free

**KATHLEEN BLISS LAW PLLC**
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

ride." *Id.* at 229. The court reasoned that the "Supreme Court made it clear that elimination of the free ride is an efficiency justification available to horizontal restraints that are ancillary to a contract integration." *Id.* at 228. "A free ride occurs when one party to an arrangement reaps benefits for which another party pays, though that transfer of wealth is not part of the agreement between them." *Id.* at 212.

Any no-poach agreement between AOC and Company A would similarly serve the efficient and ancillary purpose of eliminating the free ride. AOC and Company A both had contracts with CCSD to supply nurses to provide medical services to individual students with complex medical needs. AOC and Company A therefore competed to recruit nurses to fulfill their contractual obligations to CCSD. Once one company expended the financial and human resources to recruit and a vet a candidate and then support them through CCSD's own hiring process, and finally placed that nurse in a position that CCSD had hired them to fill, if the other company could then hire that same nurse to fill one of its spots with CCSD whilst skipping the required legwork to have the nurse approved to work at CCSD and trained, the second company would have a free ride. *See DeSlandes v. McDonald's USA, LLC*, 2021 WL 3187668, at *9 (N.D. Ill. July 28, 2021) (recognizing the procompetitive value that an ancillary "hiring restriction" provides by "encourag[ing] franchisees to train their employees without fear that other outlets will free-ride on this training by hiring away employees trained in the McDonald's way").

## II. EXTENDING THE PER SE RULE TO NO-POACH AGREEMENTS FOR THE FIRST TIME IN A CRIMINAL PROSECUTION WOULD VIOLATE DUE PROCESS

To prosecute Mr. Hee and VDA OC under a never before adopted theory that no-poach agreements are *per se* violations of the Sherman Act would deny defendants due process. Everyone "should have an opportunity to know what the law is and to conform their conduct accordingly."

16

KATHLEEN BLISS LAW PLLC
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

*Landgraf v. USI Film Prods*, 511 U.S. 244, 265 (1994). Neither Mr. Hee nor VDA OC had an opportunity to know that no-poach agreements are *per se* violations of the Sherman Act because no court has ever held that.

A penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Skilling v. United States*, 561 U.S. 358, 402 (2010). The Sherman Act itself does not provide that notice. It "does not, in clear and categorical terms, precisely identify the conduct which it proscribes." *U.S. Gypsum Co.*, 438 U.S. at 438. Instead, it relies on the history of judicial interpretation and application. Criminal liability cannot turn on the vagaries of rule-of-reason analysis or on the violation of a *per se* rule that has never before been judicially established. And the Government's Antitrust Guidance for Human Resources Professionals, issued literally the day before the alleged agreement in this case, cannot be relied upon to satisfy due process because it does not have the force of law. Indeed, the Government admitted as much in another no-poach case. *See* United States' Opp. to Defs.' Mot. to Dismiss, *United States v. Surgical Care Associates*, ECF 44 at 29, 3:21-cr-00011-L (N.D. Tex.) ("The Department of Justice does not make law when it issues guidance documents to the public…."). Even if the Antitrust Division's Guidance document could proclaim what "going forward" will be a crime under the Sherman Act, the publication of that Guidance the day before the alleged agreement certainly did not provide sufficient notice to these defendants. *See* Antitrust Guidance for Human Resources Professionals at 4 (Oct. 2016). The Government saying something is a *per se* crime does not make it so.[6]

---

[6] *See* Memorandum in Support of Defendants' Motion to Dismiss at 18, *United States v. Surgical Care Affiliates LLC*, ECF 38 at 18, No. 3:21-cr-00011-L (N.D. Tex.) ("The executive branch does not get to create new criminal prohibitions . . . .)

**KATHLEEN BLISS LAW PLLC**
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

### III. APPLICATION OF THE *PER SE* RULE TO NO-POACH AGREEMENTS IS AN UNCONSTITUTIONAL APPLICATION OF THE SHERMAN ACT.

Not only does this prosecution violate Defendants' due process rights because they lacked sufficient notice that the alleged conduct was criminal, but the Government's theory is an unconstitutional application of the Sherman Act. The Government's current efforts to criminalize conduct never previously recognized as criminal without the authority of a specific statute identifying the conduct serves to highlight the longstanding problems of relying on the vague language of the Sherman Act and *per se* jurisprudence to prosecute crimes. This practice contradicts the Supreme Court's holdings that condemn irrebuttable presumptions in the criminal context. *See, e.g., Morissette v. United States,* 342 U.S. 246, 274 (1952) (holding that for the element of intent, "the trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act").

Moreover, prosecution of "naked" no-poach agreements, as opposed to ancillary no-poach agreements, requires a judicial determination of the category of restraint. Once that determination is made against a defendant, the defendant is unable to argue to the jury that the alleged agreement did not restrain trade, but instead served a pro-competitive purpose. The jury will be left only to determine whether an agreement was reached, not whether the agreement violated the Sherman Act. In other words, a critical element of a criminal offense would not be decided by the jury. This violates due process. *In re Winship*, 397 U.S. 358, 364 (1970) ("Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *see also* Robert E. Connolly, *Some "Twinkling of the Eye" Thoughts on NCAA v. Alston,*

http://antitrustconnect.com/2021/06/30/some-twinkling-of-the-eye-thoughts-on-ncaa-v-alston/;

Roxann E. Henry, *Per Se Antitrust Presumptions in Criminal Cases,* COLUM. BUS. L.R. (2020) *available at* https://journals.library.columbia.edu/index.php/CBLR/article/view/8477.

## IV.    THE INDICTMENT FAILS TO DEMONSTRATE THE ALLEGED CONDUCT'S EFFECT ON INTERSTATE COMMERCE

"The Sherman Act reaches only activities in the flow of interstate commerce or that, 'while wholly local in nature,' would substantially affect interstate commerce if successful." *United States v. Vega-Martinez*, 949 F.3d 43, 48 (1st Cir. 2020) (quoting *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 241–42 (1980)). There are two theories available to satisfy the interstate commerce element of antitrust laws. First, "that the acts complained of, occurred within the flow of interstate commerce," and second, that "the acts complained of, occurred wholly on the state or local level, in intrastate commerce, but substantially affected interstate commerce." *Las Vegas Merchant Plumbers Ass'n v. United States*, 210 F.2d 732, 739 n.3 (9th Cir. 1954). The Indictment failed to adequately allege interstate commerce sufficiently to satisfy either theory of this element.

Here, all alleged conduct was limited to a single customer in a single market: CCSD. Indeed, most of the allegations center on nurses who worked at a single school, the John F. Miller School, within the Clark County school district. Even if the Government sufficiently alleged an agreement to fix the wages of nurses working at CCSD, the government has failed to allege that the agreement affected interstate commerce. There are no allegations that any affected nurse lived anywhere other than Nevada. There are no allegations that any customer of AOC or Company A other than CCSD, located entirely in Nevada, was affected. There are no allegations that any employees of AOC or Company A engaged in the alleged agreement outside of Nevada. And there

KATHLEEN BLISS LAW PLLC
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

are no allegations that any conduct alleged to be taken by Mr. Hee or by Individual 1 occurred outside of Nevada. The possibility of proving that the conduct happened in the flow of interstate commerce is therefore foreclosed. *See Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1143 (9th Cir. 2003) ("Monopolizing the local lemonade stand doesn't get you into federal court.").

Neither has the Government alleged any substantial effect on interstate commerce. There is no allegation here that the restraint itself (the alleged no-poach agreement) had a substantial adverse effect on interstate commerce.  Instead, the Government made a feeble attempt to satisfy the interstate commerce element by alleging that: (1) CCSD paid AOC and Company A money that traveled in interstate commerce; (2) AOC and Company A paid their nurses money that traveled in interstate commerce; (3) "the payments that CCSD made to AOC and to Company A for the services rendered by their respective nurses were funded in substantial part by the State of Nevada. The State of Nevada funding included a substantial portion of federal funding from Medicaid. . . ."; and (4) AOC and Company A employed healthcare workers in multiple states. (ECF 1 at ¶ 15(a-d)).

These allegations are insufficient to establish a substantial effect on interstate commerce. Merely alleging that "payments ... traveled in interstate commerce" is insufficient to meet the interstate commerce element of a Sherman Act claim. In *United States v. Oregon St. Med. Society*, the Supreme Court concluded that the interstate commerce element was not met where the alleged restraint—an allocation of territories—occurred only in one state and interstate commerce was "not proven . . . to be adversely affected" even though some payments traveled to out of state entities. 343 U.S. 326, 338 (1952); *see also Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 342 (1991) (Scalia, J., dissenting) (summarizing *United States v. Oregon* as holding that "in order to

prevail, the Government had to show that the *restraint itself* (the allocation of territories), had a substantial adverse effect on interstate commerce."). To allow this theory to support a criminal antitrust case would mean that any good or service for which money is paid substantially affects interstate commerce if payment simply moves via wire from one bank to another across state lines. If that were sufficient, it would subject every good or service paid for to the federal application of the Sherman Act. This would effectively eliminate this element of the Sherman Act, federalizing all commerce and potentially having significant constitutional implications.

Nor does a mere allegation of federal funding meet the level necessary to allege adequate interstate commerce. Even the relatively recent First Circuit decision addressing the interstate commerce element of criminal Sherman Act violations, *United States v. Vega-Martinez*, 949 F.3d 43 (1st Cir. 2020), is distinguishable. The activity in this case is at least one level removed from the federal funding in that case. In *Vega-Martinez,* the defendants were rigging bids and allocating the market for transportation contracts that were being paid with funds allocated via federal No Child Left Behind funds. *Vega-Martinez*, 949 F.3d at 49. The unlawful activity had a direct effect on the federal funding because the amount of federal funds being spent was directly impacted by the activity. *Vega-Martinez*, 949 F.3d at 50. Moreover, the buses that would be used in the execution of the transportation contracts also traveled in interstate commerce because they were purchased in Florida and used in Puerto Rico. *Id*.

Not so here. Instead, in this Indictment, the Government alleges only that the State of Nevada received federal funding, that CCSD received funding from the State of Nevada, and that CCSD paid AOC and Company A. But the Indictment fails to allege that the money paid to AOC and Company A actually came from federal funds. And there is no allegation that the alleged conduct affected the amount of funding the federal government provided to the State of Nevada.

21

KATHLEEN BLISS LAW PLLC
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

In fact, the Government does not even allege that the contracts between the CCSD and AOC and between CCSD and Company A were affected by the supposed agreement. Only the employment relationship among AOC and Company A and the nurses themselves was allegedly affected. And while the Indictment alleges that CCSD's relationship with AOC and Company A was based on contracts entered into in August 2013, years before the alleged agreement (ECF 1 ¶ 8) and "periodic amendments extending the contract" (¶ 9), the entire alleged conspiracy occurred within one academic year. Without additional allegations regarding how the alleged agreement might have affected the payment terms of the 2013 agreement between AOC and CCSD, there could be no allegation that federal funding was affected. And without an effect on federal funding, the mere allegation that federal funds were provided to an entity at least two steps removed from the conduct cannot be sufficient, or else it would completely read the interstate commerce requirement out of any antitrust matter involving a state or municipal entity.

Finally, the fact that AOC operated in multiple states is not sufficient to meet the interstate commerce element. It is not enough to show that "some aspects of a defendant's business have a relationship to interstate commerce." *Furlong v. Long Island College Hosp.*, 710 F.2d 922, 926 (2d Cir. 1983). "Rather, the inquiry must be whether the defendant's activity that has allegedly been 'infected' by unlawful conduct can be shown 'as a matter of practical economics' to have a not insubstantial effect on the interstate commerce involved." *Id; see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 67 (2d Cir. 1997) (*Furlong* stands for the proposition that one cannot "establish the requisite impact on commerce by reference to all of a defendant's business activities.").

Here, the Indictment does not allege any effect on interstate commerce and certainly not a substantial effect. It must be dismissed for that reason as well.

22

**KATHLEEN BLISS LAW PLLC**
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

The Government seeks to break new legal ground with this Indictment. It is antithetical to the constitutional principles of due process and fair notice to allow a criminal prosecution to establish new law. No court has recognized agreements not to recruit or hire employees as a *per se* violation of the Sherman Act, and the first court to do so—if any—must do so in a civil case. Without a history of recognition of the alleged conduct as a *per se* violation of the Sherman Act, the Government has failed to allege a *per se* violation. Finally, the Indictment does not allege any effect on interstate commerce and certainly not a substantial effect. For the reasons stated herein, the Indictment should be dismissed.

Dated: September 3, 2021                    Respectfully submitted,

By: *Carole S. Rendon*
Carole S. Rendon (*pro hac vice*)
Mary Pat Brogan (*pro hac vice*)
Sean Sandolowski (*pro hac vice pending*)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: 216.621.0200
Facsimile: 216.696.0740
crendon@bakerlaw.com
ssandolowski@bakerlaw.com
mbrogan@bakerlaw.com

Kathleen Bliss
KATHLEEN BLISS LAW PLLC
1070 W. Horizon Ridge Pkwy.,
Suite 202
Henderson, NV 89012
Office: 702.463.9074
kb@kathleenblisslaw.com
*Attorneys for Defendant VDA OC, LLC*

**KATHLEEN BLISS LAW PLLC**
1070 W. HORIZON RIDGE PKWY., SUITE 202
HENDERSON, NEVADA 89012
TEL 702.793.4202

## CERTIFICATE OF SERVICE

In accordance with Rule 49(c) of the Federal Rules of Criminal Procedure and Rule 47-11 of the Local Rules of Practice of the United States District for the District of Nevada, I certify that I am an employee of KATHLEEN BLISS LAW PLLC, and that on this 3rd day of September 2021, I did cause a true copy of:

### DEFENDANT VDA OC'S MOTION TO DISMISS

To be served via electronic service by the U.S. District Court CM/ECF system to the parties on the Electronic Filing system in this action.

By:    /s/ Priscilla Horvath
An employee of
KATHLEEN BLISS LAW PLLC

Page 34 of 34